

# NUMBER 13-25-00100-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARVIN TATUM, **Appellant,**

**v.**

THE STATE OF TEXAS, **Appellee.**

## ON APPEAL FROM THE 347TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Silva and Cron
Memorandum Opinion by Chief Justice Tijerina**

Appellant Marvin Tatum was convicted of murder, a first-degree felony. *See* TEX. PENAL CODE § 19.02(c). He was sentenced to fifty years' imprisonment. By two issues, which we have reorganized and renumbered, appellant contends that (1) the evidence is insufficient to support his conviction, and (2) the trial court erroneously admitted a video depicting the offense. We affirm.

## I. BACKGROUND

Sergio Garcia, a security officer with "a company called Sec-Ops," testified that on May 26, 2020, he was patrolling the Corpus Christi Regional Transportation Authority (RTA), at the corner of Leopard Street and Staples Street in Corpus Christi, when he saw a man he later identified as appellant "pulling another gentleman by the legs," which caused him concern. Garcia said, "I paid a little closer attention [because] you could tell that there was . . . a gentleman laying upside down and being . . . dragged by the legs." However, at that moment, Garcia could not "see anything that appeared to be wrong with the person that was being pulled." Garcia said, "I started walking towards that way . . . it just looked like it was a limp body. So I yelled," and then appellant "turned around and looked at me, and as I got closer [he] took off running." Garcia stopped to check on the person and saw "[p]retty much a lifeless body . . . [f]acing down" and "[t]here was a pool of blood that went . . . from the front of the building, went around the side of the building." Garcia called 911. Garcia said that he identified appellant as the person who he saw dragging the victim when a police officer "brought [appellant] across the street to the RTA parking lot."[1]

Travis Haecker, an officer with the Corpus Christi Police Department (CCPD), testified that he was dispatched to the scene and had his "body-worn camera" on during his investigation. Officer Haecker said that when he arrived, he saw the deceased and then assisted in securing the area. A video from Officer Haecker's camera was played during his testimony that showed how the scene appeared when he arrived and what

---

[1] The victim was Rene Villarreal. The medical examiner testified that Villarreal died as a result "of multiple blunt force injuries."

occurred during his investigation. Officer Haecker described the victim as "an adult male laying on a sidewalk," and stated that it was raining, there was "a trail of blood," and the "[m]ajority of the blood was pooled around his head." Officer Haecker then went to find the suspect; he asked Garcia to identify a person he located, but that person was not the suspect.

John Garza, an officer with the CCPD, testified that he was dispatched to the scene and based on a witness description, he searched the area and found appellant who matched the description of the suspect at a local convenience store. Officer Garza took appellant to Garcia's location for a field identification. A video of Officer Garza's body camera was played for the jury as he testified. Officer Garza stated that Garcia positively identified appellant.

David Chapa, the IT director for RTA, testified that in May 2020, RTA had video cameras that faced Leopard Street and that the video cameras were working, were "in good and functional condition," and were "able to accurately record videos." According to Chapa, RTA videos have a date and time stamp and are capable of being saved and can be transferred to a flash drive. The State showed Chapa a flash drive offered as State's Exhibit 1. Chapa stated that he recognized the flash drive and identified initials on the flash drive as his own. Chapa testified that he had seen the video saved on the flash drive and agreed that "it [was] a fair and accurate copy."

Appellant requested a "brief voir dire" of Chapa, which the trial court allowed. Appellant asked, "When was it downloaded?" Chapa replied, "I don't know the date." Appellant said, "Do you know if someone requested that to be downloaded." Chapa responded, "I got a phone call, and one of my IT staff got the phone call to help security

3

pull the video for the police," which Chapa did not personally do. Appellant objected to admission of the RTA video because "[h]e testified he was not the one that personally downloaded the video in this case," so "there is an issue of chain of custody." The State replied, "Basically as long as he's able to testify about authenticity of the video, then it is admissible." Appellant argued, "That's why I laid the predicate and he couldn't tell me when it was done, who it was done, Judge." The State said, "All that's required is that he can say, yes, this video is accurate because our cameras are accurate." The trial court overruled the objection and admitted the RTA video. However, the RTA video was not published to the jury at this time.

Albert Gonzalez, a detective with the CCPD, testified that at approximately 2:30 a.m. he was dispatched to the scene of a suspected homicide, and he arrived at "around" 3:15 a.m. Several pictures of the scene were admitted through Detective Gonzalez's testimony. Detective Gonzalez testified that State's Exhibit 7, a picture of the scene, depicted where he "believed the victim was lying when the assault occurred." Detective Gonzalez said, "We believe he was sleeping here, and as you can see the blood trail and also the blood splatter on the wall indicating the possible assault." According to Detective Gonzalez, "[t]his blood spatter occurs either during the impact or actual reverse impact, either from the actual body itself or from the actual object that's being utilized during the impact." A picture was shown to the jury depicting a blood trail from where Villarreal was initially attacked to where he was found lying face down. Detective Gonzalez relayed that Villarreal "was unrecognizable due to the injuries." Detective Gonzalez said, "We collected some videos," including one from RTA, which depicted the murder. On cross-examination, appellant asked, "And you really can't identify who [the person] was on the

4

video?" Detective Gonzalez replied, "Correct."

Detective Gonzalez testified that the police were able to collect the RTA video and that it depicted the murder. Appellant stated, "same objection as earlier before," which the trial court overruled. The video was published as Detective Gonzalez explained what occurred. The video showed the location Villarreal was lying prior to being attacked. Detective Gonzalez said, "You can see . . . [s]omeone is picking up an object from the curb, which we later discovered that it was a drain cover" that weighed about fifty to sixty pounds. Next, Detective Gonzalez stated, "At the moment you can see where he's there doing the actual strikes on the individual as he lies on the ground. . . . It's not direct, but you can see where the impact and how severe the impact is." The video shows that Villarreal was struck six times with the drain cover, and the assailant put the weapon down and "walk[ed] back to where the victim" lay. Detective Gonzalez said the video shows that the assailant "begins to drag him and go make the turn on the corner . . . as you remember on the photos, that's the same blood trail that was left behind." Detective Gonzalez testified that the murder weapon was eventually found "[b]ehind the building" and that the video shows Garcia then "ran into the frame."

The jury found appellant guilty. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends that the evidence is insufficient to support his conviction because it was a dark and rainy night, the video is too grainy to identify appellant, and there was no other physical evidence, such as DNA or bloody clothes, linking him to the crime. Appellant states that Garcia was on the opposite side of the street and about twenty or thirty feet away from the assailant, only got a glimpse of the assailant,

5

and only saw "two people . . . for a field identification without any type of line-up."

## A.  Standard of Review and Applicable Law

In a sufficiency review, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Sufficient evidence exists if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of murder by intentionally or knowingly causing the death of an individual. TEX. PENAL CODE § 19.02(b)(1).

## B.  Discussion

Garcia positively identified appellant at the scene and at trial as the person he saw dragging Villarreal's body. Garcia stated that when he yelled, appellant turned and looked at him before fleeing, which allowed him to make a positive identification. The jury was free to believe that Garcia was able to identify appellant despite the time and weather conditions. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (observing

6

that the jury is considered "the judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony" and "may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions"); *Criff v. State*, 438 S.W.3d 134, 138 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (explaining that a witness's credibility is "solely within the province of the jury" and that although the witness may have had dementia, she was unequivocal in her identification of the appellant, which supported the verdict). Furthermore, the jury could have reasonably inferred that appellant moved Villarreal's bloody, lifeless body and then fled when Garcia saw him because he had committed the crime. *See Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) ("A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt. It is consequently a well accepted principle that any conduct on the part of a person accused of a crime subsequent to its commission, which indicates a 'consciousness of guilt' may be received as a circumstance tending to prove that he committed the act with which he is charged." (citation modified)); *Barron v. State*, 630 S.W.3d 392, 405 (Tex. App.—Eastland 2021, pet. ref'd) (determining that the appellant's attempts to conceal the dead bodies and efforts to clean up and tamper with the crime scene showed a consciousness of guilt); *see also Woods v. State*, No. 05-24-01305-CR, 2026 WL 489004, at *6 (Tex. App.—Dallas Feb. 20, 2026, no pet.) (op., not designated for publication) (explaining that circumstantial evidence including the appellant's attempts to dispose of the victim's body and attempt to flee from the police supported an intentional and knowing murder). Moreover, the video shows that the same person who killed Villarreal dragged his body. Accordingly, considering all the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have

7

found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. We overrule appellant's first issue.

### III.    RULE 901

By his second issue, appellant contends that the trial court improperly admitted the RTA video because "Chapa could not state the date the RTA video was downloaded, and he was not the one who pulled the video for the police, so the defense objected over 'chain of custody,' but the Court over-ruled the objection."[2]

### A.    Applicable Law and Standard of Review

Rule 901 provides that an item is authenticated if, the proponent produces "evidence sufficient to support a finding that the item is what its proponent claims it is." TEX. R. EVID. 901(a). "In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). Rule 901 merely requires "some evidence" that supports the trial court's finding that the item proffered is what the

---

[2] The State argues that appellant failed to preserve error by not objecting to the video pursuant to Rule 901. We agree with the State that appellant did not specify that he was making a Rule 901 objection. However, in response to appellant's chain of custody objection, the State argued that it was merely required to show that the RTA video was authentic. Appellant replied that the State had neither shown who downloaded the RTA video or when it was downloaded. These are appellant's arguments on appeal. Therefore, for purposes of this memorandum opinion, we will assume without deciding that appellant has preserved his Rule 901 appellate argument that the RTA video was not authenticated because the State did not show who downloaded it and when. Additionally, appellant does not complain on appeal that the RTA video was inadmissible due to the State failing to show the chain of custody. Therefore, we will not address it. *See* TEX. R. APP. P. 38.1(i).

proponent claims it to be, and we apply a liberal standard for admissibility; thus, "[c]onclusive proof of authenticity before allowing admission of disputed evidence is not required." *Fowler v. State*, 544 S.W.3d 844, 848–49 (Tex. Crim. App. 2018). "Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue." *Id.* at 849. Circumstantial evidence can support the trial court's finding that the video depicts what the proponent claims. *Id.*

We review the admission or exclusion of evidence for abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

## B. Discussion

Chapa explained the RTA has cameras facing the street where the offense occurred, the cameras were in "good and functional condition," and the cameras were capable of "accurately" recording videos. He stated the RTA video had a date and time stamp "when pulled" and that he reviewed the RTA video saved on a flash drive, which was a fair and accurate copy. Moreover, pictures of the scene and other videos were admitted without objection, all of which depict the area where Villarreal's body was dragged and provide a basis for comparison with the RTA video. *See Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence."). We

9

conclude that the State presented some evidence that supports the trial court's finding that the RTA video accurately represented the scene despite not establishing who downloaded it and when. *See Fowler*, 544 S.W.3d at 849 (answering "yes it is possible" for the proponent of a video to "sufficiently prove its authenticity without the testimony of someone who either witnessed what the video depicts or is familiar with the functioning of the recording device"); *see also McKinney v. State*, No. 02-25-00030-CR, 2026 WL 120068, at *5 (Tex. App.—Fort Worth Jan. 15, 2026, no pet.) (mem. op., not designated for publication) ("Based on Detective Willingham's testimony and the QT video's contents, which showed the blue car with license plate SCT 1387 and its driver, a black male wearing glasses, near the robbery scene between 3:43 p.m. and 3:48 p.m., the trial court could have reasonably determined that the QT video was sufficiently authentic to admit it to the jury and thus did not abuse its discretion."); *Dillard v. State*, No. 12-17-00019-CR, 2018 WL 1407090, at *6 (Tex. App.—Tyler Mar. 21, 2018, pet. ref'd) (mem. op., not designated for publication) ("Ridgeway testified that, even though the office assistant pulled the video and sent it to the State, she viewed the videos from the night of the offense and the videos tendered to the detective are accurate representations of the Credit Union's surveillance from the night of the offense."); *Randell v. State*, No. 07-11-00493-CR, 2013 WL 309001, at *1, *3 (Tex. App.—Amarillo Jan. 25, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court did not abuse its discretion by admitting the video when the manager testified, among other things, "that the video recording was prepared on a device capable of making an accurate recording of the visual information and the recording offered was an accurate copy"). Therefore, applying a liberal standard of admissibility as required, the trial court's decision to admit

the RTA video was at least within the zone of reasonable disagreement, and we cannot conclude that the trial court abused its discretion in admitting it. *See Fowler*, 544 S.W.3d at 850 ("However, a zone of reasonable disagreement is exactly that—a zone. We hold that the trial court's determination—that [the officer] supplied facts sufficient to support a reasonable jury determination that the videotape was authentic—was a decision still within the zone of reasonable disagreement. The trial court did not err in admitting the videotape."). We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
16th day of July, 2026.